IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HOPE BUSH o/b/o D.B. | ) | |
| | ) | |
| Plaintiff (pro se), | ) | |
| | ) | |
| v. | ) | Civil Action No. WGC-11-588 |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Hope Bush ("Mrs. Bush" or "Plaintiff"), on behalf of her son, D.B., brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying D.B.'s claim for child's Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 – 1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.[1] *See* ECF Nos. 2, 5-6. Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 28) and Defendant's Motion for Summary Judgment (ECF No. 34). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.

1. **Background.**

Mrs. Bush filed an application for child's SSI on behalf of her son D.B. on December 20, 2007, alleging disability since June 16, 2002, due to loss of hearing and learning disability. R. at

---

[1] The case was subsequently reassigned to the undersigned.

21, 127-33, 154. The application was denied initially on February 29, 2008. R. at 60-63. On August 8, 2008 Mrs. Bush requested reconsideration, R. at 65-67, and on October 31, 2008, the application was denied again, R. at 68-69. On November 18, 2008 Mrs. Bush requested a hearing by an Administrative Law Judge ("ALJ"). R. at 70-72. On March 8, 2010 an ALJ convened a hearing. Mrs. Bush and her son testified and were represented by counsel. R. at 40-57. At the hearing, with the advice of counsel Mrs. Bush, on behalf of D.B., amended the alleged onset date of disability to December 20, 2007, the same date as the application. R. at 42, 149. In the May 7, 2010 decision the ALJ found D.B.'s hearing loss and receptive expressive language delay do not meet, medically equal or functionally equal the severity of any impairment listed and therefore determined D.B. has not been disabled, as defined in the Social Security Act, since December 20, 2007, the date the application was filed. R. at 35. On June 16, 2010 Mrs. Bush requested a review of the ALJ's decision. R. at 16-17. On January 6, 2011 the Appeals Council denied Mrs. Bush's request for review, R. at 1-3, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision.**

The ALJ evaluated D.B.'s claim for child's SSI using the sequential evaluation process set forth in 20 C.F.R. § 416.924 (2010). This sequential evaluation process consists of three steps. Step one is whether the claimant is doing substantial gainful activity. If the claimant is doing substantial gainful activity, the Social Security Administration will not review the claim further. If the claimant is not doing substantial gainful activity, then the Social Security Administration proceeds to step two, whether the claimant's impairment or combination of impairments is severe. If the claimant's impairment or combination of impairments is not severe, the Social Security Administration will not review the claim further. If the impairment or

combination of impairments is severe, then the Social Security Administration proceeds to step three, whether the impairment or combination of impairments meets, medically equals or functionally equals a listing.

In the May 7, 2010 decision the ALJ found at step one that D.B., born June 16, 2002 and a school-age child on December 20, 2007, has not engaged in substantial gainful activity since December 20, 2007. R. at 24. At step two the ALJ determined D.B.'s hearing loss and receptive expressive language delay are severe impairments within the meaning of 20 C.F.R. § 416.924(c) because "these impairments cause more than minimal functional limitations." *Id.* It is undisputed that D.B. has normal hearing in his left ear but profound hearing loss in his right ear. At step three the ALJ found the evidence does not establish D.B.'s impairments meet or medically equal any listed impairments, specifically, Listing 102.08.[2]

> [T]he record is devoid of evidence of the claimant's inability to hear air conduction thresholds at an average of 70 decibels (db) or greater in the better ear; or speech discrimination scores at 40 percent or less in the better ear; or inability to hear air conduction thresholds at an average of 40 decibels (db) or greater in the better ear, and a speech and language disorder which significantly affects the clarity and content of the speech and is attributable to the hearing impairment.

---

[2] *Hearing impairments.*
  A. For children below 5 years of age at time of adjudication, inability to hear air conduction thresholds at an average of 40 decibels (db) hearing level or greater in the better ear; or
  B. For children 5 years of age and above at time of adjudication:
  1. Inability to hear air conduction thresholds at an average of 70 decibels (db) or greater in the better ear; or
  2. Speech discrimination scores at 40 percent or less in the better ear; or
  3. Inability to hear air conduction thresholds at an average of 40 decibels (db) or greater in the better ear, and a speech and language disorder which significantly affects the clarity and content of the speech and is attributable to the hearing impairment.
20 C.F.R. Pt. 404, Subpt. P, App. 1 § 102.08 (2010).

As noted by the Commissioner in her motion for summary judgment, effective August 2, 2010, the Social Security Administration removed listing 102.08 and added listing 102.10 (*Hearing loss not treated with cochlear implantation*) and 102.11 (*Hearing loss treated with cochlear implantation*). ECF No. 34-1 at 9 n. 6. *See* 20 .C.F.R. Pt. 404, Subpt. P, App. 1 §§ 102.10, 102.11 (2011). Since Listing 102.08 was in effect at the time the ALJ issued his written decision, the court cites to this listing and its requirements.

R. at 24.

The ALJ then proceeded to determine whether D.B's impairments functionally equal the listing. The ALJ must evaluate the "whole child" when making a finding regarding functional equivalence. Generally, the ALJ must first consider how the child functions daily in all settings as compared to children of the same age who do not have the impairments. In other words, the ALJ considers the child's activities, meaning, everything a child does at home, at school and in the community on a daily basis. Next, the ALJ must assess the child's capacity to perform or not perform activities and assign each activity to any or all of the six domains or broad areas of functioning. SSR 09-1p[3], 2009 WL 396031 at *2 (Feb. 17, 2009). The six domains are (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

In evaluating the claimant's ability to function in each domain, the Social Security Administration will consider information in answering the following six questions.

> (i) What activities are you able to perform?
>
> (ii) What activities are you not able to perform?
>
> (iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?
>
> (iv) Where do you have difficulty with your activities-at home, in childcare, at school, or in the community?
>
> (v) Do you have difficulty independently initiating, sustaining, or completing activities?
>
> (vi) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

---

[3] Title XVI: Determining Childhood Disability under the Functional Equivalence Rule—The "Whole Child" Approach

*Id.* § 416.926a(b)(2)(i)-(vi).  An impairment functionally equals a listing-level severity if it is determined that a claimant has *marked* limitations in two domains or an *extreme* limitation in one domain.  *Id.* § 416.926a(d).

After reviewing the evidence the ALJ found D.B. had *less than marked* limitations in (i) acquiring and using information and (ii) attending and completing tasks; *marked* limitation in (iii) interacting and relating with others, and *no* limitations in (iv) moving about and manipulating objects, (v) caring for yourself and (vi) health and physical well-being.  R. at 26-35.  Because D.B. does not have an impairment or combination of impairments resulting in either *marked* limitations in two domains or an *extreme* limitation in one domain, D.B.'s impairments do not functionally equal the severity of any listed impairments.  The ALJ therefore concluded D.B. is not disabled.  R. at 35.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456.  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id*.

4.  **Discussion**.

Mrs. Bush asserts her son's hearing loss is a marked and severe limitation, particularly in the area of acquiring and using information.  The school providing 80% assistance to her son during two recent quarters, a lot of attention for one student, clearly demonstrates the severity of his hearing loss.  Although her son uses a frequency modulation ("FM") system[4] in the classroom, Mrs. Bush notes in other settings such as stores, parks and ball games lacking an FM system with a microphone, her son experiences difficulties.   ECF No. 28 at 4.

Additionally, Mrs. Bush contends her son has a marked and severe limitation in the area of attending and completing tasks.  This functional limitation is demonstrated by her son's inability to complete classwork.  Further, her son failed to meet annual overall goals established by her son's Individualized Education Program ("IEP").  *Id.*

In essence, the court interprets Mrs. Bush's brief as advocating that her son's hearing loss and receptive expressive language delay have caused *marked* limitations in the domains of (a) acquiring and using information and (b) attending and completing tasks.  Mrs. Bush contends the ALJ improperly rated her son's functioning in these areas as *less than marked*.  If the ALJ had properly rated either or both (a) acquiring and using information and (b) attending and completing tasks as *marked*, then her son's impairments would be functionally equivalent to a listing since the ALJ rated as *marked* her son's capacity to interact and relate with others.  Mrs. Bush thus claims the ALJ committed reversible error by improperly evaluating and finding the domains of (a) acquiring and using information and (b) attending and completing tasks as *less than marked*.

---

[4]  "FM Systems are wireless assistive hearing devices that enhance the use of hearing aid(s), cochlear implants and also assist people who are hard of hearing but do not wear hearing aids, in particular over distance and in noisy environments."  *Hearing Link*, http://www.hearinglink.org/fmsystems (last visited March 6, 2014).

### A. *Acquiring and Using Information*

The descriptor for school-age children (age 6 to attainment of age 12) is defined in the Regulations as follows:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

In his decision the ALJ thoroughly reviewed all the evidence. He noted clinical testing in 2002 when D.B. was three months old revealed normal hearing in D.B.'s left ear but profound hearing loss in D.B.'s right ear. An audiological evaluation in October 2007 yielded similar results. The audiologist who conducted the evaluation recommended, among other things, preferential classroom seating and consideration of use with an FM system, annual audiological monitoring and consideration of speech and language evaluation. R. at 213, 219, 221, 284.

A speech and language evaluation was conducted in November 2007. D.B. was able to follow simple one and two step directions throughout the evaluation. He demonstrated strengths in understanding simple prepositional phrases but when those prepositional phrases became more complex, he demonstrated a breakdown in understanding. R. at 224, 229, 281. Similarly, D.B. exhibited relative strengths in single word, confrontational naming tasks. However, "[a]s the expectation became such that he was expected to describe in detail or retell a remote event,

7

[D.B.'s] accuracy decreased significantly." *Id.* D.B. further demonstrated some substitution errors, such as /b/ for /v/ in the initial and medial positions, when articulating words. The evaluator found D.B. presents with moderate impairment in receptive language and expressive language and moderate to severe impairment in overall speech intelligibility. R. at 225, 230, 282. The evaluator recommended speech therapy either through an outpatient center or through his public school system. The evaluator opined optimal services would be one hour sessions once or twice per week.

D.B. was subsequently fitted with a hearing aid. During that August 2008 fitting the audiologist recommended D.B. wear his hearing aid during all waking hours. R. at 269.

D.B.'s school records reflect some improvement with the use of the hearing aid and the FM system. *See, e.g.,* R. at 312 (Progress report of October 2009 noted "[D.B.'s] progress is directly impacted when he doesn't [wear] his hearing aid."). Several months earlier, in February 2009 two teachers opined D.B.'s numerous absences are impacting educational services and monitoring of his progress. R. at 303, 305. During a February 2010 IEP meeting D.B.'s homeroom teacher noted D.B.'s progress in the classroom. R. at 307. She opined D.B.'s oral reading fluency is slightly below grade level. D.B. has a weakness in comprehending text read independently but there are no issues when text is read aloud to him. R. at 308. At this meeting Mrs. Bush disclosed her son has been using Hooked on Phonics at home and has completed Level 5. D.B. appears to be doing well with comprehension. *Id.*

It was further noted as part of the February 2010 IEP that D.B. articulates better when he is wearing the FM system versus when he is not wearing the system. If the FM system is not working properly for longer than a day, D.B.'s articulation is less crisp which impacts his overall intelligibility. R. at 318. This teacher also noted that D.B.'s hearing aid had been out for repair

since before the Christmas break. This contributed to D.B. not attaining any objectives for his articulation goals.

At the March 8, 2010 hearing before the ALJ, D.B. demonstrated an ability to hear clearly with the use of his hearing aid and the FM system. D.B.'s counsel took notice of this fact and questioned D.B.

> Q: You heard the Judge pretty well. I mean, you – – it seemed like you responded to everything he said, and you could hear him okay. Yes?
>
> A: Yes, sir.
>
> WIT: It's a quiet setting in here.
>
> BY ATTORNEY:
>
> Q: And when you are in school some of your records, at least what I read, said you had some trouble hearing the teachers. Do you remember ever having a problem with that?
>
> A: I remember. But I cannot hear the teacher when she is far away.
>
> Q: Okay.
>
> A: And only when I wear the FM can I hear her pretty well.
>
> Q: And what is that FM stuff, and what do they do for you in school with FM?
>
> A: You can hear the teacher really close, and like the thing like earphone, and like earphones. You can hear what the teacher say it with a microphone.
>
> Q: Okay. So you have – – do you have some kind of headphone on in addition to your hearing aid? Yes?
>
> A: Only on this [left] ear.
>
> Q: Okay.

> A: But the sound on this side, and you cannot hear the teacher on this [right] side, only on this [left] side.
>
> WIT: Because the FM system only goes into his good [left] ear.
>
> ATTY: Okay.

R. at 49. When the ALJ asked D.B.—"In your class where do you sit? Do you sit in the front of the room, in the back of the room, or does it matter?"—D.B. answered he sits in the front. R. at 50.

After D.B. was excused from the hearing room, D.B.'s counsel questioned Mrs. Bush about the assistance D.B. receives from his public school system to accommodate his impairments.

> Q: The last thing you made a comment about the teacher, and what is the regimen? Does he have just one teacher, or does he have help, or how does that go?
>
> A: No. He has his regular teacher which is Ms. Briggs. He also has two to three days out of a week he has a speech teacher that comes in the classroom, and he also has the audiologist that comes in once a month to check on with the FM system and go over with him for an hour his parts of his hearing aid and things like that, his visual clues, and the things in the classroom, you know, to help the teacher to interact with him. And also he has Mrs. Becker which is a hearing teacher. She works with the sign language and the deaf students that is in the school.

R. at 51.

Three doctors (Drs. Kramer, Novakoski and Sarno) on behalf of the State agency evaluated D.B.'s functional limitation from hearing loss and language impairment in February 2008 and October 2008. Each concluded D.B. has less than marked limitation in acquiring and using information due to his severe hearing loss in his right ear. The ALJ accorded significant weight to these opinions as well-reasoned, well-documented and consistent with the evidence as

a whole. R. at 29. The ALJ found the evidence supports a finding that D.B.'s hearing impairment causes less than marked limitation in acquiring and using information.

After carefully reviewing the administrative record and the ALJ's decision, the court finds substantial evidence supports the ALJ's determination that D.B.'s hearing impairment and language impairment cause less than marked limitation in acquiring and using information. There is a lack of evidence to support rating D.B.'s functioning in the domain of acquiring and using information as marked, *i.e.,* hearing and language impairments seriously interfering with D.B.'s ability "to independently initiate, sustain, or complete activities[,]" 20 C.F.R. § 416.926a(e)(2), or "standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* Accommodations have been implemented to help D.B. with his hearing and language impairments. D.B.'s teachers repeatedly encountered problems when the hearing aid and FM system were not used on a consistent basis. When D.B used these devices, his performance improved.

    B.    *Attending and Completing Tasks*

The descriptor for school-age children (age 6 to attainment of age 12) is defined in the Regulations as follows:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodations.

20 C.F.R. § 416.926a(h)(2)(iv).

Mrs. Bush asserts his son's failure to meet goals established by the IEPs as evidence of his inability to attend and complete tasks. Although an IEP provides useful information about a child's functioning, the IEP is not used to determine disability. The Social Security Administration addresses the issue of IEP goals in Social Security Ruling 09-2p[5].

> It is important to remember, therefore, that the goals in an . . . IEP are frequently set at a level that the child can readily achieve to foster a sense of accomplishment. Those goals are frequently lower than what would be expected of a child the same age without impairments. In this regard:
>
> - A child who achieves a goal may still have limitations. The child may have achieved the goal simply because it was set low, and may be developing or acquiring skills at a slower rate than children the same age without impairments.
>
> - On the other hand, the fact that the child does not achieve a goal is likely an indication of the severity of the child's impairment-related limitations. However, the child's failure to achieve a goal does not, by itself, establish that the impairment(s) functionally equals the listings.

SSR 09-2p, 2009 WL 396032 at *7 (Feb. 18, 2009). Thus, D.B.'s failure to meet IEP goals does not *automatically* mean his hearing and language impairments functionally equal a listing. Moreover, a review of the record shows some reasons why the IEP goals were not met including (a) numerous absences and (b) a period of time when his hearing aid was out for repair. For the February 2010 IEP review, one teacher noted "[a]ll objectives and present levels are *conditional upon* [D.B.] *having a working hearing aid and wearing his FM system* and attending to the material." R. at 318 (emphasis added). This teacher additionally reported, "[w]hen [D.B.] does not have appropriate hearing aid and/or is not wearing his FM system, he has a much more

---

[5] Title XVI: Determining Childhood Disability—Documenting a Child's Impairment-Related Limitations

difficult time attending to and perform auditory tasks. When [D.B.] is focusing on his work and attending to tasks his performance shines; however, he does not consistently attend to his tasks." *Id.* This teacher noted D.B. requires frequent reminders and prompts to complete his work in the classroom and in small group settings. *Id.*

The two doctors who evaluated D.B.'s records on behalf of the State agency in February 2008 found no limitation with attending and completing tasks. However the third doctor who evaluated D.B.'s record on behalf of the State agency in October 2008 found less than marked limitation. In reviewing D.B.'s report card Dr. Sarno found D.B. has mastered the area of attending and completing tasks since D.B. is able to follow directions and performs activities attentively. R. at 293. The ALJ accorded the most significant weight to Dr. Sarno's opinion.

> Dr. Sarno's opinion provides the most recent assessment of the claimant's capabilities in this functional domain. It is well documented, well reasoned, and more consistent with the evidence as a whole than are the assessments provided by Dr. Kramer and Dr. Novakoski, particularly the observations of the claimant's teachers who see him on a daily basis and monitor his academic performance over the school year.

R. at 30. The ALJ found D.B.'s hearing impairment causes less than marked limitation in attending and completing tasks. Substantial evidence supports the ALJ's determination that D.B.'s hearing and language impairments cause less than marked limitation.

5. **Conclusion.**

Substantial evidence supports the decision that D.B. is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

Date: March 14, 2014 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE